In re TITAN ENERGY
CORPORATION,
Debtor.

TITAN ENERGY
CORPORATION, Plaintiff,

v.

CENTRAL OILFIELD SUPPLY CO.
OF LOGAN, OHIO, Defendant.

Bankruptcy No. 2-86-02210.
Adv. No. 2-86-0184.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Feb. 4, 1988.

Joseph A. Giampapa, Porter, Wright, Morris & Arthur, Columbus, Ohio, for Official Creditors' Committee of Titan Energy Corp.

Thomas C. Scott, Thomas R. Allen, Thompson, Hine & Flory, Columbus, Ohio, for defendant, Cent. Oilfield Supply Co. of Logan, Ohio.

Alec Wightman, Baker & Hostetler, Columbus, Ohio, for Titan Energy Corp.

## OPINION AND ORDER SUSTAINING MOTION FOR SUMMARY JUDGMENT

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon a motion seeking summary judgment filed by plaintiff, The Official Unsecured Creditors' Committee ("OCC"), on behalf of the estate of debtor Titan Energy Corporation ("Titan"). OCC's standing to bring this action is established pursuant to a term of the plan of reorganization confirmed by this Court on March 27, 1987. The motion was opposed by defendant Central Oilfield Supply Co. of Logan, Ohio ("Central") and was submitted to the Court for decision.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference previously entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

## FINDINGS OF FACT

The facts in this matter are essentially uncontested and are found by the Court as follows:

1. Titan was obligated to Central pursuant to the terms of a cognovit note ("the Note"). Titan failed to make the payments required under the terms of the Note.

2. Central filed an action against Titan based upon the Note and was granted judgment in the amount of $270,708.67, plus interest, by the Court of Common Pleas of Hocking County, Ohio. A certified copy of that judgment was filed in Guernsey County, Ohio on April 29, 1986.

3. As part of its collection of that judgment, Central garnished $40,432.80 from funds in which Titan had an interest which were on deposit with the Peoples Banking Company in Cambridge, Ohio ("Peoples"). That garnishment occurred on or about May 20, 1986.

4. Titan filed its petition under Chapter 11 of the Bankruptcy Code on June 6, 1986.

5. The schedule of creditors filed in Titan's bankruptcy case showed Peoples as a secured creditor with a total claim of $204,849.93.

6. On August 21, 1986 OCC brought this action to avoid the transfer to Central as a preference pursuant to 11 U.S.C. § 547.

## ISSUES OF LAW

In its memorandum in opposition to OCC's motion for summary judgment, Central asserts that the transfer of $40,432.80 of Titan's funds to Central is not a preferential transfer which is avoidable by OCC. Central's defense is premised upon its assertion that Peoples, the holder of the garnished funds, was and is a creditor of Titan, with a right to setoff part of its obligation against Titan's funds on deposit in the account with Peoples. According to Central, the existence of that setoff right means that the garnished funds would have gone to Peoples had they not gone to Central. As a result, the transfer in question did not remove property from the bankruptcy estate which otherwise would

have been available for unsecured creditors, and without such depletion, Central argues that a preferential transfer has not occurred.

In its motion for judgment OCC alleges not only that all elements of a preference have been established, but also that Central is barred from raising the setoff issue by its failure to raise that matter as an affirmative defense in its answer.

## CONCLUSIONS OF LAW

■ Central's defense, based upon rationale used in the judicial doctrine of "earmarking", asks this Court to find that the transfer from Peoples to Central, by way of garnishment, was not a transfer of an interest of the debtor in property which depleted this bankruptcy estate, but was essentially a substitution of one creditor for another. That defense is not one of the affirmative defenses to a preference listed in 11 U.S.C. § 547(c) nor is it a specifically enumerated affirmative defense as set forth in Fed.R.Civ.P. 8(c), made applicable to this proceeding by Bankruptcy Rules 7001 and 7008. Rather, Central's defense is a denial of the first element of the preference cause of action—that a transfer be "of an interest of the debtor in property." 11 U.S.C. § 547(b). Accordingly, the Court finds that Central's defense is not one which is barred because it was not raised in the answer to the plaintiff's complaint.

■ That holding does not end the inquiry in this matter, however. Although Central is not barred because of rules applicable to affirmative defenses from asserting that a transfer of property of the debtor did not occur, the Court notes that the element of transfer of an interest of the debtor in property was admitted by Central in paragraph three of its answer, directed toward paragraph seven of the complaint. That response admitted all assertions of paragraph seven of the complaint except the amount of the transfer. Such admission establishes the required element against Central and bars its reassertion by way of defense to a motion for summary judgment. Fed.R.Civ.P. 8(d); *Brown v. Tennessee Gas Pipeline Co.*, 623

F.2d 450 (6th Cir.1980). As no other elements of a preference appear to be contested, OCC's motion for summary judgment must be sustained.

■ Should the Court be in error in holding that Central is estopped by its answer from challenging an element of the plaintiff's case previously admitted, the Court also finds that OCC should prevail on the merits of the legal issue raised.

The substance of Central's defense is that the same concerns which give merit to an "earmarking" defense to a preference are present in this matter and cause the transfer to Central to fall outside the proper scope of a preference. The "earmarking" defense establishes that, under certain circumstances, a transfer from a third party to a creditor of the debtor is not avoidable as a preference. That result recognizes that where the only change is in the identity of the creditor, without a corresponding depletion of the bankruptcy estate, one policy underlying the power to avoid a preference has not been offended by the transfer. If funds from a third party are specifically designated for transfer to a particular creditor and the debtor is either a mere conduit or uninvolved in the transfer, the funds are specifically said to be "earmarked." That circumstance, most commonly found when a loan is obtained from one lender for the specific purpose of repaying another, merely substitutes one creditor for another without corresponding depletion of the estate. *Genova v. Rivera Funeral Home (In re Castillo)*, 39 B.R. 45 (Bankr.D.Col.1984). Where the debtor's control is also minimal or nonexistent, case law holds that the combination of earmarked funds and the debtor's lack of control over the disposition of such funds causes the transfer not to be a transfer of an interest of the debtor in property. *Mandrosa v. Peoples Banking Co. (In re Hartley)*, 825 F.2d 1067 (6th Cir.1987); *Grubb v. General Contract Purchase Corp.*, 94 F.2d 70 (2nd Cir.1938).

The Court believes application of the "earmarking" rule or of an exception based upon analogy to that rule is not appropriate in this proceeding.

First, there is no indication or proof that Peoples would have exercised its right of setoff. Assuming such right existed, it is not self-executing. Further, the funds transferred from Peoples to Central were never earmarked or specified by the debtor for application to Central's debt. Titan owned a portion of the funds in an account at Peoples which Central garnished, and Titan could have exerted control over such funds had it so chosen. That degree of ownership, combined with potential control, is not consistent with the factual patterns in earmarking cases. See *Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351 (5th Cir.1986), *reh'g denied*, 801 F.2d 398.

More importantly, the policies underlying the statutory power to avoid preferential transfers, as reflected in the legislative history, are not served by excepting this transfer from avoidance. Those policies are summarized as follows:

"The purpose of the preference section is two-fold. First, by permitting the trustee to avoid pre-bankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution."

Analysis of H.R. 8200, H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), reprinted in *U.S.Code Cong. & Ad.News* 5787, 5963, 6138 (1978).

Although the underlying policies of prevention of last-minute dismemberment and equality of distribution are not negatively impacted in a true "earmarking" situation, where the debtor's assets are unchanged by the transfer of funds from one creditor to another such that one creditor is merely substituted for another similarly situated creditor, those are not the facts in this action.

Central is enriched by its receipt of Titan's funds from Peoples. That enrichment caused Central to receive a greater percentage of repayment by the transfer than other unsecured creditors in its class will receive under the confirmed plan. Therefore, regardless of the effect upon Peoples, the policy of equality of distribution is undermined by the transfer to Central. It is also clear that Central dismembered the debtor very close to the time of the bankruptcy filing, a fact which also impacts negatively on the stated legislative policy of deterring "the race of diligence."

Central's primary justification in support of excepting this transfer from avoidance is that Titan's estate has not been depleted by the transfer because what went to Central would otherwise have gone to secured creditor Peoples. Even if that assertion is true, a fact which is not certain, Central misses the point in its dependence upon a comparison with Peoples. It is Central's position vis-a-vis the other unsecured creditors which must be the focus of that inquiry. The last minute improvement in Central's position is exactly what the preference power is designed to avoid. To permit Central to retain its last-minute garnishment by determining this transfer to be only a substitution of creditors would undermine that important policy.

Based upon the foregoing, OCC's motion for summary judgment is SUSTAINED. As no contested facts remain for decision and no other elements of the action were contested in Central's response to the summary judgment motion, the Clerk of the Bankruptcy Court shall enter judgment on this complaint in favor of OCC for recovery of a preferential transfer in the amount of

$40,432.80, plus 15% annual interest from the date of the filing of the complaint.

IT IS SO ORDERED.