### In re INTERNATIONAL VENTURES, INC.

### INTERNATIONAL VENTURES, INC., Plaintiff,

### v.

### BLOCK PROPERTIES VII, Defendant.

**Bankruptcy No. 95–43854 S.**

**Adversary No. 96–4162.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Nov. 7, 1997.

---

Steven O. Vondran, Little Rock, AR, for Plaintiff.

Thomas Thrash, Little Rock, AR, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

This adversary proceeding is a preference action filed on August 6, 1996, pursuant to 11 U.S.C. § 547, to collect a payment that was made by the debtor to a creditor within the ninety days prior to the filing of the bankruptcy case. Block Properties VII ("Block"), having raised the "earmarking doctrine" as a defense to the preference action, at trial the primary issue was whether there was a transfer of property of the debtor.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2) as exemplified by 28 U.S.C. § 157(b)(2)(F).

### I. FINDINGS OF FACT

International Ventures, Inc. ("International Ventures") entered into a long-term lease agreement with Block relating to rental of the space for a Bonanza restaurant in Lawrence, Kansas. The obligations under the lease were guaranteed by three individuals, Russell Rawn, James Manning and Donald Hurst. When International Ventures did not fulfill its obligations under the lease, Block sued International Ventures and the guarantors in the state district court of Douglas County, Kansas for $225,000. Block obtained default judgments against International Ventures and Manning. While motions for summary judgment were pending against the remaining defendants, the parties, including those against whom default had been entered, settled the state court action:[1] Block Properties agreed to accept $75,000 in exchange for dismissal of the action and release of all claims.

The funds to pay Block were obtained through a loan with First Commercial Bank, N.A. ("First Commercial"), located in Little Rock, Arkansas. The note was signed on September 15, 1995, with International Ventures, Manning, and Rawn promising to pay the debt on the loan. The note was secured by (1) a pledge of stocks owned by Rawn; and (2) a pledge of property owned by International Ventures, a 1/20th interest in Memphis Properties' Limited Partnership ("the partnership interest"). First Commercial filed a UCC–1 financing statement regarding the partnership interest with the Arkansas Secretary of State on October 3, 1995, but did not file a UCC–1 financing statement with the County Clerk of Pulaski County, Arkansas.

The loan was procured by Rawn through First Commercial because he had a long-time business relationship with that bank. Indeed, a representative testified that he would not have made the loan absent the involvement of Rawn. From the perspective of First Commercial, a purpose of the loan was to reduce Rawn's potential liability of $225,000 in the Kansas state court action to $75,000.

The promissory note stated that the purpose of the loan was to "Settle lawsuit on lease of restaurant in Kansas," and it was understood by the defendants that International Ventures would make the interest payments on the loan and thereafter satisfy the loan with proceeds from a sale of property. The payment transactions were structured so that the guarantors would not be required to

---

1. Initially, there was only a settlement between Manning and Block for $50,000. The amount was later increased upon the inclusion of International Ventures and Rawn to the settlement.

make payment. International Ventures, as the obligor on the leases, would be responsible for payment of the settlement of the litigation regarding nonpayment of the leases. However, when International Ventures did not satisfy the loan, it was Rawn's property, the pledged stock, that was sold in partial payment of the note.

The loan proceeds were deposited into an operating account of the debtor by a cashier's check dated September 19, 1995, drawn on First Commercial. On September 20, 1995, the debtor issued check number 2723 in the amount of $75,000, drawn on the same operating account, payable to Block, and Buck, Bohm and Stein, P.C., Block's attorneys. The check was endorsed only by Block and it received the proceeds of the check, the check clearing the debtor's account on September 29, 1995. This payment was made within ninety days of the filing of this bankruptcy case, while the debtor was insolvent. The parties stipulate that in a Chapter 7 liquidation, the debtor's unsecured creditors would receive a dividend of approximately 9.9% of their claim.

## II. CONCLUSIONS OF LAW

### A. Elements of a Preference Action

Section 547(b) provides for avoidance of any transfer of an interest of the debtor in property. *Brown v. First National Bank of Little Rock*, 748 F.2d 490, 491 (8th Cir.1984); *Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351 (5th Cir.1986). On August 6, 1996, the debtor-in-possession, International Ventures, filed this preference action against Block to recover the $75,000 paid to Block. Block's asserts that there was not a transfer of an interest in property of the debtor such that the transfer may not be avoided. Bankruptcy Code section 547 provides in pertinent part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to and for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within ninety days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

\*   \*   \*

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

(g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

11 U.S.C. § 547(b), (f), (g).

The debtor plaintiff bears the burden of proving the elements of avoidability under section 547(b). *Nordberg v. Arab Banking Corporation (In re Chase & Sanborn Corporation )*, 904 F.2d 588, 595 n. 15 (11th Cir.1990). Each of these elements must be proven by a preponderance of the evidence. *Pembroke Development Corporation v. Commonwealth Savings & Loan Association (In re Pembroke Development Corporation )*, 124 B.R. 398, 401 (Bankr.S.D.Fla. 1991). However, the creditor or transferee bears the burden of proving affirmative defenses it raises pursuant to section 547(c). *Nordberg*, 904 F.2d at 595 n. 15. Thus, the debtor-in-possession is required to demonstrate that a transfer—

1. of an interest in property of International Ventures occurred;

2. was to and for the benefit of Block;

3. for or on account of an antecedent debt;

4. made while International Ventures was insolvent;

5. within ninety days prior to the commencement of the case; and

6. Block was left better off than if the transfer had not been made and Block asserted its claim in a Chapter 7 liquidation.

*See Buckley v. Jeld–Wen, Inc. (In re Interior Wood Products Company* ), 986 F.2d 228 (8th Cir.1993).

### B. *Application of Section 574(b)*

The latter of these elements are not significantly in dispute.[2] Indeed, Block's post-trial brief addresses only the single issue of whether there was a transfer of interest of the debtor. There is no question· that the transfer was made to Block, on account of an antecedent debt, within ninety days of the petition in bankruptcy, for Block's benefit, while International Ventures was insolvent. Moreover, the evidence establishes that, whether assuming that the claim is $75,000 or the amount of the unpaid default judgment, approximately $172,000, Block received more in the transfer than it would in a Chapter 7 liquidation. Thus International Ventures met the enumerated elements of the statute, 11 U.S.C. § 547(b)(1)–(4).

### C. *Transfer of an Interest of the Debtor*

The parties dispute, however, whether there was a transfer of an interest of the debtor. The primary discrete issue to be resolved is at what point the transfer occurred for purposes of Section 547(b)(1).

#### 1. *The Earmarking Doctrine*

While the Bankruptcy Code does not define "property of the debtor," the Supreme Court has indicated that " 'property of the

debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. Internal Revenue Service,* 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990). For example, a debtor has no interest in property that it holds in trust for another, or in which it has no legal or equitable interest. *Id.* This maxim holds true for payments that are made by a third party to reduce a debt. No transfer of property of the debtor occurs when a third party pays the creditor directly. *Vadnais Lumber Supply, Inc. v. Byrne (In re Vadnais Lumber Supply, Inc.),* 100 B.R. 127, 133 (Bankr.D.Mass.1989).

■ The earmarking doctrine is not strictly an affirmative defense under Section 547(c), under which the defendant has the burden of proof, 11 U.S.C. § 547(g), but, rather, is an argument arising out of the language in section 547(b) which requires that, as an element of the trustee's proof, recovery be based upon a transfer of an interest of the debtor. Thus, the earmarking doctrine is derived from an element of the plaintiff's proof rather than an affirmative defense. *See In re Safe–T–Brake of South Florida, Inc.,* 162 B.R. 359 (Bankr.S.D.Fla. 1993); *In re Titan Energy Corp.,* 82 B.R. 907 (Bankr.S.D.Ohio 1988). The doctrine was originally based upon the rationale that since the funds were provided by a third party for the specific · purpose of paying a selected creditor, the debtor had no actual control over disbursement. Thus, because the estate was not diminished by the payment, the payee should not be required to return the funds. *See generally Buckley v. Jeld–Wen, Inc. (In re Interior Wood Products Co.),* 986 F.2d 228 (8th Cir.1993); *Dubis v. Heritage Bank & Trust Co. (In re Kenosha Liquidation Corp.),* 158 B.R. 774 (Bankr.E.D.Wis. 1993); *Estate of Love v. First Interstate Bank of Montana (In re Love* ), 155 B.R. 225

---

**2.** Block's original and amended answers also alleged the new value defense under 11 U.S.C. § 547(c)(1). However, inasmuch as Block did not present evidence regarding the new value defense and has not addressed the issue in its briefs, the issue is deemed waived. *Cf. Davis v.*

*Ford Motor Co. (In re Davis* ), 128 F.3d 631 (8th Cir.1997)(Cross-appeal "deemed dismissed" upon failure to argue the cross-appeal). In any event, there does not appear to be any factual basis for asserting that new value was given in the exchange.

(Bankr.D.Mont.1993). If the result of the transaction is merely to substitute one creditor for another, the estate is not diminished. *See Kupetz v. United States (In re California Trade Technical Schools, Inc.)*, 923 F.2d 641, 646 (9th Cir.1991). There is no diminution, directly or indirectly, of the fund to which creditors of the same class can resort for payment of their debts. "It is essential that the debtor have an interest in the property transferred so that the estate is thereby diminished." *Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351, 1355–56 (5th Cir.1986). *Accord Brown v. First National Bank of Little Rock*, 748 F.2d 490, 491 (8th Cir.1984).

■■■ Also, the doctrine is often, applied, where, as here, funds are entrusted to the debtor with instructions or a specific agreement to pay the debtor's obligation on a particular antecedent debt. *See generally, McCuskey v. National Bank of Waterloo (In re Bohlen Enterprises, Ltd.)*, 859 F.2d 561, 566 (8th Cir.1988)(describing history of the doctrine). The doctrine has thereby been extended beyond the guarantor doctrine to situations where the new creditor is a lender rather than a guarantor. *Id.* at 566. Although in *Bohlen,* the Eighth Circuit criticized this earlier extension of the doctrine, it did not specifically reject it. Instead, the Eighth Circuit established the specific elements for application of the earmarking doctrine:

(1) There exists an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt;

(2) The terms are actually performed; and

(3) The transaction, viewed as a whole, does not result in any diminution of the estate.

*McCuskey v. National Bank of Waterloo (In re Bohlen Enterprises, Ltd.)*, 859 F.2d 561, 566 (8th Cir.1988).

2. *Application of the Earmarking Doctrine*

■■ In the instant case, there was a specific agreement between the new lender and the debtor that the new funds were to be used to pay the specified antecedent debt to Block. Indeed, the promissory note executed by International Ventures established the purpose of the transaction:

"BUSINESS: SETTLE LAWSUIT ON LEASE OF RESTAURANT IN KANSAS."

Both International Ventures and the lender intended that the proceeds of the check issued by the bank would be made to Block. The fact that the check was initially deposited into an account of International Ventures does not alter either the specific intent or the term of the agreement that the funds were to be remitted to Block.

The fact that the guarantors would benefit by the payment of the debt does not preclude a finding of an agreement between International Ventures and the Bank. Further, the fact that First Commercial wanted the guarantors to be part of the transaction and required Rawn to provide supplemental collateral likewise does not obviate the existence of the agreement for earmarking purposes. It was the intent of all parties that payment of the loan was to be made by International Ventures through sale of its partnership interest in Memphis Properties and that the partnership interest was the underlying collateral for the loan. The fact that Rawn also was required to pledge property, and in fact later had to surrender that property, does not alter the intent and purpose of the agreement.

Second, the terms of the agreement were actually performed. The check, made payable to the debtor, was deposited into the debtor's account and, on the next day, a check was issued to Block and its attorneys in payment of the settlement of the lease dispute. Block received the funds pursuant to the terms of the agreement between the new lender, First Commercial, and the debtor, International Ventures.

The third element of the earmarking doctrine is not met, however, because the transaction, viewed as a whole, resulted in a diminution of the estate. Under the earmarking doctrine, as discussed above, the substitution of one creditor for another does not generally

result in a diminution of the debtor's estate. However, if the debtor transfers a security interest in return for the funds, the debtor has, by giving a security interest in exchange for the payment of an unsecured debt, transferred an interest in property. *Brown v. Mt. Prospect State Bank (In re Muncrief)*, 900 F.2d 1220, 1224 n. 4 (8th Cir.1990). In the instant case, when First Commercial was made the creditor, it received a benefit that was not available to the prior creditor Block. It received a security interest in property of the debtor. Accordingly, there was not a simple substitution of one creditor for another such that the earmarking doctrine is inapplicable.

Block asserts that whether a transfer of an interest occurred is determined as of the date of the filing of the petition. Since First Commercial Bank failed to perfect the security interest under state law, Ark.Code Annot. § 4–9–401(c), and the effect of the filing of the bankruptcy case is to render that interest unsecured, there is no diminution to the estate. Block's only citation to authority however, is in the context of section 547(b)(5), rather than section 547(b)(1).[3]

This issue was extensively addressed in *Taunt v. Fidelity Bank of Michigan (In re Royal Golf Products Corp.)*, 908 F.2d 91, 94–95 (6th Cir.1990), wherein the Sixth Circuit, distinguishing the section 547(b)(1) and (b)(5) contexts, held that an estate is depleted to the extent a security interest is given and that it is the time of the transfer that controls determination of the issue, even if the security interest is later determined to be unperfected. Each court addressing this issue explicitly or implicitly has decided that the date of the transfer is the relevant time for analysis under section 547(a)(1). *See Lowrey v. Manufacturers Hanover Leasing Corp. (In re Robinson Bros. Drilling, Inc.)*, 6 F.3d 701, 704 (10th Cir.1993), *cert. denied*, 510 U.S. 1214, 114 S.Ct. 1336, 127 L.Ed.2d 684 (1994); *Abramson v. St. Regis Paper Co. (In re Abramson)*, 715 F.2d 934, 940 (5th Cir.1983)("[B]y proving the seven statutory elements of § 60 and by proving in addition that the property transferred belonged to Galaxy and had value at the time of the transfer, the trustee has fulfilled his burden of establishing that a diminution of the estate occurred."); *see also Marlow v. Rollins Cotton Co., (In re Julien Co.)*, 202 B.R. 89 (W.D.Tenn.1996); *In re Grabill*, 135 B.R. 101, 112 (Bankr.N.D.Ill.1991); *see generally Abramson v. St. Regis Paper Co. (In re Abramson)*, 715 F.2d 934, 939–40 & n. 9 (5th Cir.1983); 5 King, *Collier on Bankruptcy* ¶¶ 547.03[1], [2], 547.05, 547.09 (Matthew Bender 15 rev. ed.1997). Thus, the Court looks to the nature of the interest at the time the transfer was made. Since, at the time of the transaction, the debtor transferred an interest in property, a security interest, there was in fact a diminution of the estate such that the earmarking doctrine is inapplicable. Since there was a transfer of an interest of the debtor in property, the debtor has demonstrated each of the elements of a preference such that it is entitled to recovery of the payment to Block.

Of course, the transfer is avoidable only to the extent of the interest transferred. In this case, since the interest transferred was a security interest, the Court looks to the value of the collateral given in order to determine the value of the transfer. Inasmuch as International Venture's interest in the collateral, the partnership interest, was $80,000, an amount in excess of the loan, International Ventures is entitled to recover the entire $75,000 transfer.

3. Block asserts that, under *In re Bohlen*, 859 F.2d 561, the Eighth Circuit requires a section 547(b)(5) timing analysis to determine if the transaction will result in a diminution in value to the estate. This is incorrect. Although in *Bohlen* only the fifth of the *enumerated* elements of section 547(b) was in dispute, it does not follow that an analysis of the earmarking doctrine must be analyzed with regard to the fifth element of section 547(b). The issue of whether there was a transfer of an interest in property of the debtor is a separate element of proof, although it is stated as a preface of the subsection, not separately enumerated in the statute. *See Bohlen*, 859 F.2d at 565 ("The earmarking doctrine is entirely a court-made interpretation of the statutory requirement that a voidable preference must involve a 'transfer of an interest of the debtor in property.' "). The fact that the parties also disputed the element stated in paragraph 547(b)(5) does not mean that the court must apply a paragraph 547(b)(5) analysis to the separate issue of when the transfer occurred.

### III. CONCLUSION

The purpose of the section 547 avoidance statute, is to place all unsecured creditors on an equal basis for purposes of distribution of the debtor's assets. *In re Bohlen*, 859 F.2d at 566 n. 10 ("[T]he provision facilitates the prime bankruptcy policy of equality of distribution among creditors of the debtor."); *accord Advo–System, Inc. v. Maxway Corp.*, 37 F.3d 1044, 1047 (4th Cir.1994). In this case, when a security interest was granted to First Commercial, the ability of International Ventures to pay its creditors was restricted. For example, International Ventures could not contemplate paying other creditors from the anticipated proceeds of the sale of the partnership interest. Within the preference period, the 90–day time period Congress deemed appropriate for equalizing creditors, Block received full payment of the amount for which it settled its claim and, it appears, may be treated as an unsecured creditor in this bankruptcy. In contrast, other creditors were not afforded this treatment. A comparison of the treatment of First Commercial and Block is telling: the payment to Block satisfied its claim; First Commercial has received only a portion of its claim. There was, in effect, a preference of the old creditor over the new. *Cf. In re Bohlen*, 859 F.2d at 566. The payment to Block not only falls demonstrably within the statutory elements of a preference, but also within the policy parameters of the statute. Accordingly, it is

**ORDERED** that judgment shall be entered in favor of the plaintiff in the amount of $75,000.

**IT IS SO ORDERED.**