**In re BETTY'S HOMES, INC., Debtor.**

**Betty's Homes, Inc., Plaintiff,**

**v.**

**Cooper Homes, Inc., Defendant.**

**Bankruptcy No. 5:06–bk–72389.**
**Adversary No. 5:07–ap–7366.**

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

Sept. 3, 2008.

Stanley V. Bond, Attorney at Law, Fayetteville, AR, for Plaintiff.

Frank H. Falkner, Herbert C. Rule, III, Rose Law Firm, Little Rock, AR, for Defendant.

## OPINION AND ORDER

BEN T. BARRY, Bankruptcy Judge.

Before the Court is the debtor's complaint against Cooper Homes, Inc. [Cooper Homes] to avoid as a preferential transfer under 11 U.S.C. § 547 the payment of $200,000.00 by cashier's check from Community First Bank to Cooper Homes within the 90 days prior to the debtor filing its voluntary chapter 11 bankruptcy petition. Cooper Homes argues that the transfer of funds from Community First Bank to Cooper Homes was not the transfer of an interest of the debtor in property and is governed by the "earmarking doctrine," which removes the transfer from the purview of § 547. For the reasons stated below, the Court finds that the earmarking doctrine is not applicable in this situation. The Court further finds that the debtor did not meet its burden of proof with regard to one of the elements of a preferential transfer and, accordingly, denies the debtor's complaint.

**Jurisdiction**

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(F). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**Background**

The debtor, Betty's Homes, Inc., was a homebuilder in Northwest Arkansas. The creditor, Cooper Homes, does business in Northwest Arkansas as Village Home Center, and supplied materials for a number of the debtor's projects. According to Robert Abercrombie, the former president and now chief liquidating officer of the debtor, each job for which Cooper Homes supplied materials was set up as a separate account at Village Home Center. Abercrombie testified that although the debtor typically paid Cooper Homes every 30 days on the accounts, because of limited house sales at the end of 2005 and the beginning of 2006, the debtor was in poor financial condition

during the summer of 2006. During that time the debtor fell between 120 and 150 days behind in its payments to Cooper Homes.

In July 2006, Cooper Homes advised the debtor that Cooper Homes was about to file its materialman's liens on a number of the debtor's properties as a result of the late payments. The debtor contacted Arkansas National Bank [ANB] for an additional draw on its account to pay Cooper Homes. Although ANB did grant the debtor an extension on some of its current loans, it did not agree to the additional draw. The debtor then contacted Community First Bank with the same request and was able to draw down $200,000.00 on some of its existing construction loans. The money was deposited into the debtor's account, a cashier's check payable to "Cooper Building Materials" [1] was issued, and a bank officer delivered the check to Cooper Homes. According to Abercrombie, drawing down the $200,000.00 depleted the funds available to complete the seven jobs that related to the funds. Community First Bank retained its security interest in the properties related to the funds.

Although the $200,000.00 payment was enough to prevent the initial filing of the materialman's liens by Cooper Homes, in August 2006 Cooper Homes mailed the required notices on an additional 38 properties and filed its materialman's liens. On October 20, 2006, the debtor filed its voluntary chapter 11 petition. A plan of liquidation was confirmed on July 10, 2007, and this adversary proceeding to avoid the alleged preferential payment of $200,000.00 to Cooper Homes was filed on November 28, 2007.

**1.** For the remainder of the opinion, Cooper Building Materials, Village Home Center, and Cooper Homes, Inc. will all be referred to as Cooper Homes.

## 11 U.S.C. § 547—Preferential Transfer Generally

Under § 547 of the bankruptcy code, a trustee, or a debtor in possession in a chapter 11 case,[2] may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). According to this section,

any prepetition transfer is preferential and avoidable if five elements of proof are present. The transfer must be made (1) to or for the benefit of a creditor; (2) for or on account of antecedent debt; (3) while the debtor was insolvent; (4) to a noninsider on or within ninety days of the filing of the bankruptcy case; and such transfer must (5) result in the

**2.** Section 547(b) makes certain transactions voidable by the trustee. Section 1107(a) gives the debtor in possession the powers of a trustee.

creditor receiving more than the creditor would have received in a hypothetical liquidation in a chapter 7 case.

*Wade v. Midwest Acceptance Corp. (In re Wade)*, 219 B.R. 815, 818–19 (8th Cir. BAP 1998). The purpose of § 547 is "to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy." *Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines, Inc. [II])*, 130 F.3d 323, 326 (8th Cir.1997). Aided by a rebuttable presumption of insolvency under § 547(f), the debtor in possession has the burden of proof regarding these issues. 11 U.S.C. § 547(g).

The code also lists nine specific defenses to a preferential transfer, the occurrence of any of which would prevent the trustee or debtor in possession from avoiding the transfer. 11 U.S.C. § 547(c). Cooper Homes did not raise any of these affirmative defenses. Instead, it relied on the "earmarking doctrine" to defeat the primary element of the debtor's proof based on a transfer of an interest of the debtor.

**Transfer of an Interest . . .**

Before looking at the five required elements of a preferential transfer, a threshold determination must be made with regard to a transfer of an interest of the debtor. Cooper Homes argues that because the cashier's check was issued by Community First Bank and made payable to Cooper Homes, it was never under the "control" of the debtor. Because of this, according to Cooper Homes, the transfer was not a transfer of an interest of the debtor in property. Conversely, the debtor argues that because the funds were deposited into the debtor's account and the cashier's check was drawn on that account, the debtor did have control of the funds. But for Abercrombie's specific direction to Community First Bank to draft a cashier's check payable to Cooper Homes, the debtor would have had access to those funds.

The Supreme Court has recognized that for the purpose of determining a preferential transfer, "property of the debtor" is property that would have been property of the estate had it not been transferred prior to the commencement of the case. *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). For example, if the debtor is holding property in trust for another, the debtor has no recognizable interest in that property in relation to the debtor's bankruptcy. This is also true for payments made by a third party to reduce the debtor's debt. In both of these situations, the property held by the debtor or transferred to a creditor by a third party would not become property of the estate upon commencement of the case. Stated another way, "[n]o transfer of property of the debtor occurs when a third party pays the creditor directly." *International Ventures, Inc. v. Block Props. VII (In re International Ventures, Inc.)*, 214 B.R. 590, 594 (Bankr.E.D.Ark.1997). This, in essence, is known as the earmarking doctrine. Because the estate would not be diminished by the transfer of the property, the payee should not be required to return the funds. The result of the transaction is merely to substitute one creditor for another creditor of the same class. *Id.* at 594–95.

The Eighth Circuit has established the elements for application of the earmarking doctrine:

(1) There exists an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt;

(2) The terms are actually performed; and

(3) The transaction, viewed as a whole, does not result in any diminution of the estate.

*McCuskey v. National Bank of Waterloo (In re Bohlen Enter., Ltd.),* 859 F.2d 561, 566 (8th Cir.1988). The first two elements are easily met: (1) there was an agreement between the debtor and Community First Bank that the "new" funds would be used to pay down the debtor's account with Cooper Homes, and (2) that is how the funds were used. However, the third element of the earmarking doctrine has not been met. Although both Community First Bank and Cooper Homes were creditors of the debtor, Community First Bank was a secured creditor at the time of the transfer and Cooper Homes was not. The funds used to effectuate the transfer were obtained by drawing down a construction loan secured by seven jobs in the Quail Ridge subdivision. According to Abercrombie, this depleted the funds available to complete those jobs. Cooper Homes, according to its chief operating officer, was an unsecured creditor at the time of the transfer; it had not yet perfected its materialman's liens. As a result of the security interest held by Community First Bank, the debtor transferred (or caused to be transferred) secured funds for the payment of an unsecured debt. In doing so, the debtor transferred an interest in property that resulted in a diminution of the estate. Because this is not simply a substitution of one creditor in a class for another creditor in the same class, the earmarking doctrine is not applicable. *International Ventures,* 214 B.R. at 595–96. Hence, the threshold determination that a transfer of an interest of the debtor in fact occurred has been met.

### To a Creditor . . .

Most of the required elements for a preferential transfer are not in dispute. First, Cooper Homes was a creditor of the debtor and did receive the $200,000.00 transfer.

### For an Antecedent Debt . . .

■ Second, the debt to which the transfer applied was an antecedent debt. A debt is antecedent for preference purposes if the debt "was incurred before the allegedly preferential transfer." *Jones Truck Lines, Inc. [II],* 130 F.3d at 329. In this case, there is no dispute that the debt to which the transfer applied was incurred prior to the transfer. The transfer resulted from Cooper Homes informing the debtor that it was ready to file materialman's liens for past due obligations.

### While the Debtor was Insolvent . . .

■ Third, the transfer must have been made while the debtor was insolvent. Although the debtor in possession has the burden of proof as to the elements of a preference, there is a presumption that the debtor was insolvent "on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). That presumption shifts the burden of producing at least some evidence that the debtor was solvent to the creditor. *Armstrong v. John Deere Co., (In re Gilbertson),* 90 B.R. 1006, 1009 (Bankr.D.N.D. 1988)("When the creditor offers no evidence at all as to the debtor's solvency, the trustee may rely on the presumption . . . ."). Because Cooper Homes did not present any evidence that the debtor was solvent, it failed in its burden of production, and the Court finds that the debtor was insolvent at the time of the transfer.

### During the Preferential Period . . .

Fourth, the preferential period is "on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b)(4)(A). The alleged preferential transfer occurred on July 26, 2006, and the debtor filed its petition on October 20, 2006, within the 90 day preferential period.

## Enabling the Creditor to Receive More Than It Would Receive Under Chapter 7

 Finally, the remaining issue for the Court is whether Cooper Homes received more as a result of the transfer than it would have received in a hypothetical liquidation in a chapter 7 case. The law is generally well settled that unless creditors would receive a 100% payout, an unsecured creditor who received a payment during the preference period is in a position to receive more than it would have received in a chapter 7 liquidation. *Hoffinger Indus., Inc. v. Bunch (In re Hoffinger)*, 313 B.R. 812, 827 (Bankr.E.D.Ark. 2004) (citing *RDM Holdings, Inc. v. DMAC Invs., Inc. (In re RDM Sports Group, Inc.)*, 250 B.R. 805, 814 (Bankr. N.D.Ga.2000)); *see also Zachman Homes, Inc. v. Oredson (In re Zachman Homes, Inc.)*, 40 B.R. 171, 173 (Bankr.D.Minn. 1984)(same).

As with the first four elements, the debtor has the burden of proof with regard to whether Cooper Homes received more than it would have received under a chapter 7 liquidation. The only evidence offered in this regard was Abercrombie's unrebutted testimony that "there was nothing left" and that he had "used up all the equity." However, that testimony related specifically to the debtor's receipt of the $200,000.00 from Community First Bank, not to the general financial condition of the debtor. The debtor offered no other evidence as to the value or equity that may have existed in other property (even though the president of Community First Bank testified that more than one bank was involved with Betty's Homes), or that because of the receipt of $200,000.00 Cooper Homes received more than it would have received under a chapter 7 liquidation. There is simply no evidence before the Court as to the amount of unsecured debt or the actual or proposed distributions afforded to unsecured creditors of the debtor's estate.[3] Accordingly, the Court must find that the debtor did not meet its burden of proof with regard to the fifth element: that Cooper received more than it would have received if the case were a case under chapter 7, the transfer had not been made, and Cooper received payment to the extent provided by the code.

Based on the findings of fact and conclusions of law stated above, the Court finds that the debtor failed to meet its burden of proof with regard to the alleged $200,000.00 preferential transfer, and the debtor's *Complaint to Avoid Preference* is denied.

IT IS SO ORDERED.

---

3. The code defines "insolvent" as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation." 11 U.S.C. § 101(32). Based on this definition, on or within 90 days prior to the date of filing, presumably, not all creditors would have received a distribution equaling a 100% payout because the debtor's debts exceeded its assets. As a result, an unsecured creditor that received an additional payment during the preferential period, such as Cooper Homes, potentially would have received more than it would have received under a chapter 7 liquidation. However, although the *potential* to have received more exists, insolvency does not by itself create a conclusive determination that the creditor, in fact, did receive more. However slight the evidence, the debtor is required to meet its burden of proof with regard to the fifth element. *See, e.g., McLaughlin v. Hoole Mach. and Engraving Corp. (In re Parkline Corp.)*, 185 B.R. 164, 168 (Bankr.D.N.J.1994)(unrebutted testimony that creditor received more than it would have received under chapter 7 is sufficient to satisfy the fifth element).