In re DeMERT & DOUGHERTY, INC., Debtor,

Alex D. Moglia, as Trustee of the Chapter 7 Estate of DeMert & Dougherty, Inc., Plaintiff–Appellee,

v.

ISP Technologies, Inc., and ISP Technologies–Van Dyk, Defendant–Appellant.

No. 98–CV–7948.
Bankruptcy No. 96 B 0851.

United States District Court, N.D. Illinois, Eastern Division.

March 31, 1999.

William J. Barrett, Gardner, Carton & Douglas, Chicago, IL, for ISP Technologies, Inc., appellant.

Michael Joseph Small, Foley & Lardner, Chicago, IL, for Alex D. Moglia, appellee.

## MEMORANDUM OPINION
## AND ORDER

CASTILLO, District Judge.

This case is before the Court on direct appeal from the Bankruptcy Court. Since at least 1984, Appellant/Defendant ISP Technologies, Inc. ("ISP") sold chemical products to Debtor DeMert & Dougherty, Inc. ("DeMert & Dougherty") for incorporation into chemical-based consumer products, including hair care products. In January 1996, DeMert & Dougherty filed a petition for relief under Chapter 11 of the Bankruptcy Code, later converted into a Chapter 7 case. On January 8, 1998, Appellee/Plaintiff Alex D. Moglia, DeMert & Dougherty's Chapter 7 Trustee, filed an adversary complaint to recover preference payments DeMert & Dougherty made to ISP in the ninety days before DeMert & Dougherty filed for bankruptcy protection.

The case went to trial before the Honorable John H. Squires of the United States Bankruptcy Court for the Northern District of Illinois. The Bankruptcy Court found that ISP carried its burden to prove that the transfers were made in the "ordi-

nary course of business" between ISP and DeMert & Dougherty. However, the Bankruptcy Court held that ISP failed to establish that a portion of the payments could be avoided as made in accordance with "ordinary business terms."

ISP appeals the Bankruptcy Court's entry of judgment against it. Specifically, ISP asserts that the Bankruptcy Court clearly erred when it 1) determined that the relevant industry for analyzing the "ordinary business terms" component of ISP's ordinary course of business defense was the sale of chemicals for incorporation into beauty products; and 2) found that ISP's witness' testimony was insufficient to show that the transfers at issue were made according to "ordinary business terms" of ISP's competitors. We affirm.

## I. RELEVANT FACTS

The following facts are gleaned from the Transcript of the Proceedings and the parties' briefs.[1] ISP manufactures a broad range of specialty chemicals for incorporation into a variety of products, including clarifiers for beer and wine, ingredients for degreasers, UV inhibitors, and polymers for hair care products. DeMert & Dougherty manufactures beauty products and "HEET", a product sold to prevent automobile gas line freeze.

In January 1996, DeMert & Dougherty filed for bankruptcy protection. Prior to filing, during the summer of 1995, DeMert & Dougherty acknowledged its financial distress and asked ISP and a number of other suppliers to convert a large portion of their open account balances into promissory notes. DeMert & Dougherty also requested that these suppliers/creditors continue supplying product on an open account basis. ISP agreed and continued its shipments to DeMert & Dougherty until just before the January 1996 bankruptcy filing. DeMert & Dougherty made no

---

1. All references to the Bankruptcy Court proceedings will be designated by the date of the proceedings, e.g. 10/22/98 Tr. at p. ——.

payments to ISP on the promissory note. (10/26/98 Tr. at p. 26). However, DeMert & Dougherty did pay invoices for product subsequently shipped. At issue are $93,-767.00 in invoice payments made for product ISP shipped to DeMert & Dougherty during the preference period. (*Id.*)

The Trustee commenced this adversarial proceeding against ISP to avoid these alleged preferential payments pursuant to § 547 of the Bankruptcy Code. The parties stipulate that the invoice payments to ISP qualified as preferences under 11 U.S.C. § 547(b).[2] The parties also stipulate that $26,636.50 of the invoice payments to ISP could not be avoided by the Trustee because, pursuant to 11 U.S.C. § 547(c)(4), ISP provided that amount of "subsequent new value" to DeMert & Dougherty.[3] With respect to the remaining amount of preference period payments—approximately $67,000.00—ISP raised the affirmative defense that the payments were made in the ordinary course of business and thus fell within the "ordinary course of business" exception to the Trustee's avoidance power found in 11 U.S.C. § 547(c)(2).

Under § 547(c)(2), a trustee may not avoid payments made during the preference period when those payments were made in the ordinary course of business. In order to claim the § 547(c)(2) ordinary course of business exception, a preference defendant must satisfy three elements. The creditor must show "that the debt had been incurred in the ordinary course of the business of both the debtor and the creditor, § 547(c)(2)(A); that the payment, too, had been made and received in the ordi-

nary course of their businesses, § 547(c)(2)(B); and that the payment had been 'made according to ordinary business terms' [under] § 547(c)(2)(C)." *In re Tolona Pizza Products Corp.*, 3 F.3d 1029, 1031 (7th Cir.1993). The parties stipulate that DeMert & Dougherty incurred the debt to ISP in the ordinary course of their business, thereby satisfying the first requirement of the § 547(c)(2) ordinary course of business defense. To satisfy the remaining two elements of the ordinary course of business defense at trial, ISP had to prove that the preferential payments were made in the ordinary course of business between ISP and DeMert & Dougherty pursuant to § 547(c)(2)(B), and made according to "ordinary business terms" pursuant to § 547(c)(2)(C).

At trial, Catherine Joy, ISP's Midwest Sales Manager, testified that from at least April 1984 ISP sold "[p]olymers for hair care business" to DeMert & Dougherty, which DeMert & Dougherty ultimately incorporated into hair sprays. (10/26/98 Tr. at 8–9). Joy testified that these polymers were not specific to hair sprays but are sold to other industries as well. (*Id.* at 9) ISP claims that DeMert & Dougherty also purchased chemicals from ISP for incorporation into HEET, but, at trial, ISP did not present evidence that ISP sold DeMert & Dougherty any chemicals other than those used in hair care products.

ISP offered the testimony of its current credit manager, Gordon Miller, to show that DeMert & Dougherty's payments to ISP were made within the ordinary course of business and according to ordinary busi-

**2.** When, within ninety days before declaring bankruptcy, the debtor makes a payment to an unsecured creditor, the payment is considered a "preference." 11 U.S.C. § 547(b). Subject to certain statutory exceptions, including the affirmative defenses ISP raised, the trustee in bankruptcy can recover preferential payments and thus force the creditor to join the debtor's other unsecured creditors in the asset distribution of the bankruptcy estate. *See In re Midway Airlines, Inc.*, 69 F.3d 792, 794 n. 1 (7th Cir.1995).

**3.** Section 547(c)(4) provides that the trustee may not avoid as a preferential payment or transfer any payment or transfer "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—(A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." 11 U.S.C. § 547(c)(4).

ness terms under § 547(c)(2)(B) and § 547(c)(2)(C) and thus could not be avoided as preferential transfers. Miller has been employed by ISP since July 1996, six months after DeMert & Dougherty filed for bankruptcy protection and well after the preference period. The Trustee objected to Miller's status as an expert and fact witness on the grounds that Miller was not employed in any capacity in the chemical industry during the critical period from March 1994 through July 1996, and that he had no personal knowledge of the credit practices of ISP's competitors. The Bankruptcy Court overruled the Trustee's objection and permitted Miller to testify.

In determining the relevant industry, Judge Squires recognized that Seventh Circuit caselaw failed to fully delineate "the parameters are of the industry practice" for purposes of determining relevant competitor practices under § 547(c)(2)(C). (10/22/98 Tr. at p. 57). Judge Squires ruled that the beauty products industry was the appropriate industry standard in this case to measure "ordinary business terms" under § 547(c)(2)(C). (*Id.*) To define the relevant industry more broadly than chemical suppliers selling beauty-care product to manufacturers would, for the purposes of § 547(c)(2)(C), fail to "establish the true meaningful industry standard" because ISP supplies to such a broad spectrum of manufacturers. (*Id.* at 58) Therefore, the Bankruptcy Court adopted the more narrow industry definition.

At the end of the two day trial, the Bankruptcy Court held that the payments at issue were made in the ordinary course of business between ISP and DeMert & Dougherty, satisfying § 547(c)(2)(B). (10/26/98 Tr. at p. 44). However, the Bankruptcy Court held that, under § 547(c)(2)(C), ISP failed to establish by a preponderance of the evidence that DeMert & Dougherty's payments to ISP were made according to "ordinary business terms" within the beauty products or hair care products industry. (10/26/98 Tr. at p. 41).

In making this determination, the Bankruptcy Court discounted ISP's expert witness testimony, finding that Miller had no personal knowledge of ISP's competitors' credit terms or payment histories, had not conducted his own survey of the competitors' credit terms or payment histories, and that none of the materials reviewed by Miller "specifically dealt with credit terms or payment collection histories on the beauty products subset or subindustry for the larger chemical industry" of which ISP is a supplier and member. (10/26/98 Tr. at p. 40–41). Judge Squires stated that there must be "evidence obtainable as to what the payment histories are of the various manufacturers of hair and beauty care products to their chemical suppliers who furnish the raw materials from which they fabricate all these products that are readily available," but that ISP failed to produce such evidence. (10/26/98 Tr. at p. 49). Because ISP failed to establish that the payments were made according to ordinary business terms, the Bankruptcy Court entered judgment for the Trustee under 11 U.S.C. § 547(b) and 11 U.S.C. § 550.

## II. *LEGAL STANDARDS*

This Court must determine whether the Bankruptcy Court erred in concluding that ISP failed to establish that DeMert & Dougherty made the payments according to "ordinary business terms" under 11 U.S.C. § 547(c)(2)(C). A district court is required to accept the bankruptcy judge's factual findings as long as they are not clearly erroneous. *In re Tolona Pizza,* 3 F.3d at 1033. A bankruptcy court's findings of law are reviewed *de novo, see In re Yonikus,* 996 F.2d 866, 868 (7th Cir.1993), as are mixed question of law and fact, *see Etter v. J. Pease Constr. Co.,* 963 F.2d 1005, 1008 (7th Cir.1992). "The legal standards used by the bankruptcy court to define the phrase 'ordinary course of business' are subject to *de novo* review," and

"the bankruptcy court's findings of fact with respect to what transpired ... are subject to review for clear error." *Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414, 422 (N.D.Ill.1995).

The parties in this case are at odds regarding the proper standard of review on the issue of the determining the relevant industry. ISP argues that determining the relevant industry is a question of law and therefore subject to *de novo* review; the Trustee argues the appropriate standard of review is clearly erroneous.

Circuit Courts addressing the issue have determined that "[d]efining the relevant industry is appropriately left to the bankruptcy courts to determine as questions of fact heavily dependent upon the circumstances of each individual case." *In re Roblin Indus., Inc.*, 78 F.3d at 40; (*citing In re Tolona Pizza*, 3 F.3d at 1033; *In re Molded Acoustical Prod., Inc.*, 18 F.3d at 224, 227 n. 12; *In re Fred Hawes Org., Inc.*, 957 F.2d at 246). In concluding that "[t]he question of the relevant industry is one of fact subject to clearly erroneous review," the Second Circuit noted that "looking to precepts of antitrust law will often prove helpful to the bankruptcy court in defining the relevant industry when disputed." *In re Molded Acoustical Prod., Inc.*, 18 F.3d at 224, 227 n. 12 (citing *Fishman v. Wirtz*, 807 F.2d 520, 531 (7th Cir.1986)) (finding relevant market in antitrust case subject to clearly erroneous review). We need not decide the question, however, because under either standard we affirm the Bankruptcy Court's decision.

### III.  *ANALYSIS*

█ In order to claim the ordinary course of business exception to preference avoidance under 11 U.S.C. § 547(c)(2), a preference defendant must prove, by a preponderance of evidence, three distinct elements of the defense. *See In re Mid-*

*way Airlines, Inc.*, 69 F.3d at 797. The parties stipulate that the first requirement of the ordinary course of business exception, found in § 547(c)(2)(A), is satisfied. Similarly, the parties accept the Bankruptcy Court's determination that ISP satisfied the second requirement of § 547(c)(2) by proving DeMert & Dougherty's payments to ISP were made in the ordinary course of business between the parties. Only the last element of § 547(c)(2) is at issue in this appeal: whether ISP proved that the preferential transfers by DeMert & Dougherty to ISP were "made according to ordinary business terms" under § 547(c)(2)(C).

ISP argues that the Bankruptcy Court erred [4] when, for purposes of defining "ordinary business terms," it determined that the relevant industry is chemical suppliers to beauty supply manufacturers. Instead, ISP argues, the relevant industry in this case is much broader and that ISP must only present evidence of "ordinary business terms" within the industry composed of chemical manufacturers selling any chemical products. Even if the Bankruptcy Court correctly defined the relevant industry, ISP argues that it presented sufficient evidence that DeMert & Dougherty's payments were made within ordinary business terms.

### 1.  *The Bankruptcy Court Properly Defined the Relevant Industry*

█ The Seventh Circuit holds that "ordinary business terms" under § 547(c)(2)(C) refers to the type and range of payment terms encompassing the practices of firms that are similar in some general way to the creditor. *In re Midway Airlines, Inc.*, 69 F.3d at 797; *In re Tolona Pizza*, 3 F.3d at 1033. In fact, with one exception, every Circuit Court to inquire into the meaning of "ordinary business terms" has come to the conclusion

---

4. The Court notes that ISP selected the term "erred" in presenting its arguments on ap-  peal.

that § 547(c)(2)(C) refers "more broadly to customary terms and conditions used by other parties in the same industry facing the same or similar problems," as opposed to merely focusing on the dealings between the debtor and the creditor. *See, e.g., Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.),* 78 F.3d 30, 39 (2nd Cir. 1996) [5]; *but see Marathon Oil Co. v. Flatau (In re Craig Oil Co.),* 785 F.2d 1563, 1566–67 (11th Cir.1986) (holding that no evidence of industry practice beyond the conduct of the debtor and creditor in question is necessary to satisfy § 547(c)(2)(C)).

■ Recognizing the difficulty defendants would encounter in attempting to gather information to establish industry-wide standards, the Seventh Circuit introduced something of an evidentiary compromise: although a creditor need not establish the existence of a single, uniform set of business practices, *In re Tolona Pizza,* 3 F.3d at 1033, "a preference defendant must introduce evidence of its competitors' accounts receivable and collections practices and also of the actual payment practices of its competitors' customers." *Schwinn Plan Committee v. AFS Cycle & Co., Ltd. (In re Schwinn Bicycle Co.),* 205 B.R. 557, 573 (Bankr.N.D.Ill.1997); *accord Solow v. Ogletree, Deakins, Nash, Smoak & Stewart (In re Midway Airlines, Inc.),* 180 B.R. 1009, 1016 (Bankr.N.D.Ill.1995) (holding that the Seventh Circuit "requires some evidence regarding what a defendant's competitors are doing in order to meet the section 547(c)(2)(C) requirement").

Although the Seventh Circuit has clearly delineated the type of evidence necessary to establish that a payment was consistent with "ordinary business terms", it has provided less direct guidance for identifying the relevant business or industry to be examined. *In re Tolona,* 3 F.3d at 1033 (noting that it can be "difficult to identify the industry whose norm shall govern," and further "there can be great variance in billing practices within an industry.") The Seventh Circuit has made clear, however, that " 'ordinary business terms' refers to the range of terms that encompasses the practices in which firms similar in some general way to the creditor engage." *In re Tolona Pizza,* 3 F.3d at 1033. Since *Tolona Pizza,* courts inquiring into "ordinary business terms" consistently require a preference defendant to present "evidence of prevailing practices among similarly situated competitors facing the same or similar problems." *In re U.S.A. Inns of Eureka Springs, Ark., Inc.,* 9 F.3d 680, 685 (8th Cir.1993) (holding that the relevant industry was savings and loans firms dealing with real estate firms, not savings and loans firms in general)

■ In determining what types of firms are "similar in some general way to the creditor," a majority of courts have looked not only to the creditor's industry activity, but to the creditor's activity as it relates to the debtor specifically. *In re Midway Airlines, Inc.,* 180 B.R. at 1016 (finding relevant industry consisted of the domestic air carrier legal services industry rather than the broader legal services or air carrier services industry); *In re Schwinn Bicycle Co.,* 205 B.R. at 573 (finding relevant industry that of treadmill manufacturers rather than broader sports or exercise equipment manufacturers). "This is because the creditor may have different standards or practices depending upon with whom and in what capacity it is dealing." *In re Milwaukee Cheese Wis. Inc.,* 191 B.R. at 401. The Bankruptcy Court in *Milwaukee Cheese* offered the following illustration:

---

**5.** *See also Advo–System, Inc. v. Maxway Corp.,* 37 F.3d 1044, 1048 (4th Cir.1994); *Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.),* 25 F.3d 728, 733 (9th Cir.1994); *Fiber Lite Corp. v. Molded Acoustical Prod., Inc. (In re Molded Acoustical Prod. Inc.),* 18 F.3d 217, 223 (3rd Cir.1994); *Clark v. Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners ),* 12 F.3d 1549, 1553 (10th Cir.1993); *Jones v. United Sav. & Loan Ass'n (In re U.S.A. Inns of Eureka Springs, Ark., Inc.),* 9 F.3d 680, 683–84 (8th Cir.1993); *Logan v. Basic Distrib. Corp. (In re Fred Hawes Org., Inc.),* 957 F.2d 239, 243–44 (6th Cir.1992)

Take the example of a paper manufacturer who wears three different hats: selling its products to wholesalers, acting as a wholesaler and selling to retailers, and selling directly to the public through a retail business of its own. That paper manufacturer may very well have different credit terms with wholesalers and retailers than with the public at its retail store. Clearly, then, when dealing with a particular debtor, the entire gamut of the paper manufacturer's credit terms need not be considered, nor are they all relevant. Rather, assuming the paper manufacturer is selling to a wholesaler, the range of terms to be considered are only the range of terms extended to other wholesalers.

*Id.* Restricting the relevant industry to the creditor' activities in relation to the debtor properly accounts for the fact that billing practices vary greatly from industry to industry, and enables courts to more properly examine billing and payment practices by focusing solely upon "competitors facing the same or similar problems." *In re U.S.A. Inns of Eureka Springs, Ark., Inc.,* 9 F.3d at 685.

▆ The relevant industry in this case is properly that of chemical suppliers to manufacturers of beauty products, and the Bankruptcy Court correctly required evidence of "ordinary business terms" within that industry. A meaningful inquiry into ordinary business terms requires a comparison of firms similarly situated to ISP who are facing the same or similar problems when selling chemicals to manufacturers in the beauty or hair care industry. While ISP supplies chemicals "for specific uses" to a wide range of varied and distinct industries, including beauty care products manufacturers, beer and wine makers, manufacturers of degreasers, automotive products manufacturers, and manufacturers of roofing products, its competitors in the automotive products industry would arguably face different challenges than its competitors in the beer and wine makers industry. The Bankruptcy Court properly focused upon ISP's beauty products competitors and their industry standards in determining whether the payments were made pursuant to "ordinary business terms".

To adopt the broader "chemical manufacturers supplying chemical products" industry advanced by ISP would render the § 547(c)(2)(C) inquiry into "ordinary business terms" meaningless. This expansive characterization of the relevant industry would allow the comparison of practices customary to chemical suppliers selling to industries distinct and unrelated to the beauty products industry wherein the same or similar credit issues or problems may not exist. Thus, we affirm the Bankruptcy Court's determination that the relevant industry in this case is that industry consisting of chemical suppliers selling to manufacturers of beauty or hair care products.

## 2. ISP Produced Insufficient Evidence of "Ordinary Business Terms"

Next, ISP argues that the evidence produced at trial was sufficient to establish the payments were made within ordinary business terms under 11 U.S.C. § 547(c)(2)(C). The Bankruptcy Court found that ISP failed to meet its burden of proof under § 547(c)(2)(C). A bankruptcy court's findings regarding the sufficiency of a defendant's "ordinary business terms" evidence is not disturbed unless clearly erroneous. *In re Midway Airlines, Inc.,* 69 F.3d at 795. We find the Bankruptcy Court did not clearly err when it held ISP presented insufficient evidence that the payments were made within ordinary business terms.

▆ The Seventh Circuit holds that the "ordinary business terms" test is objective and focuses on a preference defendant's competitors. *See id.* A creditor's evidence of "ordinary business terms" under § 547(c)(2)(C) "may not be vague and must be based on personal first-hand knowledge gained from exposure to the competitors' collections practices during or

near the preference period." *In re Schwinn Bicycle Co.*, 205 B.R. at 573 (*citing In re Midway Airlines, Inc.*, 69 F.3d at 799 n. 9). "General testimony by an employee of the defendant, unsupported by any specific data, is insufficient to prove 'ordinary business terms.'" *In re Schwinn Bicycle Co.*, 205 B.R. at 573. Section 547(c)(2)(C) does not require a preference defendant to produce "evidence procured directly from competitors," or require expert testimony from those outside of the defendant's organization. *In re Midway Airlines*, 69 F.3d at 797. However, "[u]nder § 547(c)(2)(C), a preference defendant must introduce evidence of its competitors' accounts receivable and collections practices and also of the actual payment practices of its competitors' customers." *In re Schwinn Bicycle Co.*, 205 B.R. at 573.

ISP offered the testimony of Gordon Miller, its current credit manager, to show that the preferential payments made by DeMert & Dougherty to ISP were made according to ordinary business terms. The Bankruptcy Court ruled that although Miller had substantial experience as a credit manager, he had very limited experience in the industry defined as chemical suppliers to beauty product manufacturers. (10/22/98 Tr. at p. 60) Although the Bankruptcy Court rejected the Trustee's objection and ruled that Miller's testimony would be admitted as expert testimony, the Bankruptcy Court clarified that it was "not inclined to give overwhelming weight to his opinion relative to the payments made by the debtor here to ISP." (*Id.*) Despite the Bankruptcy Court's admonition to present evidence relating to ordinary business terms within the declared industry, ISP failed to produce additional witnesses or documentary evidence relating to whether DeMert & Dougherty made the preferential payments to ISP according to ordinary business terms within the chemical suppliers to

manufacturers of beauty care products industry.

The Seventh Circuit has already concluded that evidence virtually identical to ISP's offer of proof—consisting solely of Miller's testimony—did not meet the requirements of § 547(c)(2)(C). *In re Midway Airlines, Inc.*, 69 F.3d at 793, 799. In *In re Midway Airlines, Inc.*, the Seventh Circuit found insufficient evidence of "ordinary business terms" where the preference defendant's sole witness on "ordinary business terms" did not have personal firsthand knowledge of competitors' practices and failed to introduced other evidence of such practices. *See id.* The court also ruled that the bankruptcy court properly discounted testimony regarding ordinary business terms where given by the preference defendant's former employee who was not employed by the company during the preference period and did not have firsthand knowledge regarding its competitors' practices. *See id.* at 799 n. 9.

Similarly, in this case, Miller admitted to having no personal firsthand knowledge of ISP competitors' credit terms or payment histories. Miller testified that he did not recall ever having reviewed any materials which addressed the ordinary or customary credit terms or payment histories of the beauty products or hair care industry, or any materials that discussed in detail the credit terms of ISP's competitors in the broader chemical supply industry. Additionally, prior to his employment at ISP, Miller had never been involved with the beauty care products industry, and was not even employed at ISP during the time the preferential transfers were made. Thus, we affirm the Bankruptcy Court's ruling that ISP failed to prove by a preponderance of the evidence that preferential payments made to it by DeMert & Dougherty were made within ordinary business terms and thus failed to meets its burden under § 547(c)(2)(C).[6]

---

**6.** ISP argues that this Court should also consider the duration of ISP's dealings with De-

Mert & Dougherty in assessing the sufficiency of the evidence of "ordinary business terms,"

### V. CONCLUSION

For these reasons, the judgment of the United States Bankruptcy Court is affirmed. The Clerk of the Court is instructed to enter judgment in favor of Appellee Alex D. Moglia, as Trustee for DeMert & Dougherty, Inc., and against Appellant, ISP Technologies, Inc.

an evidentiary approach which has been used in the Third Circuit. *See In re Molded Acoustical Prod., Inc.,* 18 F.3d 217, 226–27 (3rd Cir.1994). However, the Seventh Circuit has expressly stated that the "ordinary business terms" test is objective and "proof of the parties' own relationship is insufficient." *In re Midway Airlines, Inc.,* 69 F.3d at 798–99. In light of ISP's failure to produce any evidence relating to the ordinary business terms in the beauty care products industry, even if permitted, evidence of prior credit dealings between ISP and DeMert & Dougherty would not suffice for the purposes of § 547(c)(2)(C).