**In re CRYSTAL MEDICAL PRODUCTS, INC., Debtor.**

**The Official Committee of Unsecured Creditors of Crystal Medical Products, Inc., Plaintiff,**

v.

**Pedersen & Houpt, Defendant.**

**Bankruptcy No. 96 B 13478. Adversary No. 98 A 00994.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Oct. 29, 1999.

Steven B. Towbin, Peter J. Roberts, D'Ancona & Pflaum, LLC, Chicago, IL, for Plaintiff.

Steven M. Austermiller, Gregory N. Kazarian, Pedersen & Houpt, Chicago, IL, for Defendant.

### MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ERWIN I. KATZ, Bankruptcy Judge.

This adversary case is a core proceeding in the bankruptcy filed by Crystal Medical Products, Inc. ("CMP") under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* The Official Committee of Unsecured Creditors of CMP ("Committee") has filed a complaint to avoid and recover two prepetition transfers made by CMP to Pedersen & Houpt ("P & H").

This matter comes before the Court on Plaintiff's Motion for Summary Judgment. Both parties have submitted statements of material fact as to which there is no dispute under Local Rule 402.

## JURISDICTION & VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). Venue lies under 28 U.S.C. § 1409.

## BACKGROUND

The following undisputed facts were taken from the 402(M) and 402(N) statements, the responses thereto and the affidavits submitted by the parties:

CMP is a company engaged in the business of developing immunoassay technology and selling medical devices. CMP's troubles began with its Board of Directors and certain officers, who were led by Orvin "Skip" Nordness, Jr. ("Nordness"), CMP's largest shareholder. Nordness engaged in a course of conduct harmful to the business by grossly mismanaging CMP's assets; he failed to pay payroll withholding taxes for three years and federal corporate income tax for two years, attempted to use company funds to purchase an automobile dealership, unrelated to CMP's business and fraudulently converted over $100,000 in company cash to his own accounts. In 1995, CMP was evicted from its offices and operations were at a standstill. Also in 1995, shareholders of CMP filed a derivative suit, attempting to remove the current directors and officers. The shareholders retained P & H as their attorneys to prosecute the derivative suit. In February 1996, the suit was settled and as part of the settlement, certain board members, including Nordness, were forced to resign from CMP's board of directors.

The new board passed a resolution for the corporation to pay the P & H legal fees incurred by the shareholders. After new directors were elected, they retained P & H in a variety of matters including litigation, corporate and financing matters, and P & H counseled the CMP board on the board's efforts to obtain financing. P & H invoiced CMP for work performed.

In the course of pursuing financing, certain shareholders of CMP formed KingCo, L.L.C. ("KingCo"). KingCo agreed to provide CMP with a $1,200,000 line of credit. CMP actually borrowed $585,000 from KingCo, pursuant to a note and related security and credit agreements; this loan was secured by substantially all of CMP's assets. The loan proceeds were then distributed to certain vendors, service providers and professionals who had delivered services to CMP.

P & H was one of the creditors paid with the loan proceeds; P & H received two cashier's checks from CMP totaling $100,000 and deposited them into its bank account on May 23, 1996. $54,862.75 ("claim portion") of this amount was applied by P & H to an outstanding invoice for services rendered and fees incurred on behalf of CMP itself, and $45,137.25 ("shareholder portion") of the payment was applied to an outstanding invoice for services rendered and fees incurred on behalf of CMP shareholders.

On May 24, 1996, CMP filed its Chapter 11 petition. Plaintiff filed its adversary complaint on May 21, 1998. On January 15, 1999, the Committee served P & H with requests for admission, to which P & H did not timely respond. The Committee moved for summary judgment on May 7, 1999. On June 23, 1999, P & H moved for leave to file its answers to the request for admissions, to which it attached the answers. This Court will allow late filing of the answers and has considered them in deciding on this motion. The Court will consider assessment of costs and fees incurred by the Committee against P & H due to late filing.

The Committee alleges that the prepetition transfer made by CMP to P & H totaling $100,000 is avoidable. In Count I of its complaint, the Committee alleges that the claim portion of the payment is avoidable under § 547(b) as a preference. In Count II, the Committee asserts that the claim portion of the payment was a fraudulent transfer within the meaning of 740 ILCS 160/5 and 160/6, and that the payment may be avoided under § 544(b). Finally, in Count III, the Committee alleges that it may avoid the shareholder portion of the payment pursuant to § 548.

P & H, however, contends that the funds loaned by KingCo to CMP were earmarked for payment of fees owed to P & H and therefore were never property of the estate. P & H also argues that the Committee cannot avoid the payment as a preference because, pursuant to § 547(c)(1) there was a contemporaneous exchange for new value and the transfer was made in the ordinary course of business, thus qualifying for protection from avoidance under § 547(c)(2). P & H also asserts that there are numerous issues of material fact as to the fraudulent transfer claims.

The Committee's motion for summary judgment is denied.

## DISCUSSION

### I. Standards for Summary Judgment

The purpose of summary judgment under Federal Rule of Civil Procedure 56 (adopted by Federal Rule of Bankruptcy Procedure 7056) is to avoid unnecessary trials when there is no genuine issue of material fact. *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987), *Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir.1990). The existence of factual disputes is sufficient to deny summary judgment only if the disputed facts are outcome determinative. *UNR Industries, Inc. v. Walker (In re UNR Industries, Inc.)*, 224 B.R. 664, 665 (Bankr.N.D.Ill.1998), *Jones Truck Lines, Inc. v. Republic Tobacco, Inc.*, 178 B.R. 999, 1003 (Bankr.N.D.Ill.1995). The burden is on the moving party to show that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552, *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56, *Matter of Chicago, Missouri & Western Ry. Co.*, 156 B.R. 567 (Bankr.N.D.Ill.1993) This burden is met when the record, as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348.

On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348, citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, the party opposing the motion may not rest upon pleadings, allegations or denials. The response of that party just set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment must be entered against a party who fails to show the existence of an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. In that situation, there is no genuine issue of material

fact since a total failure of proof concerning an essential element of the case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548. Therefore, the moving party is entitled to judgment as a matter of law. *Id.*

## II. Application of summary judgment standards

### A) Section 547(b) and the claim portion of the payment

■ The Committee seeks summary judgment in its favor in the amount of $100,000. It contends that summary judgment is warranted as to the $54,862.75 claim portion of the payment because the facts indicate that this prepetition payment to P & H was an avoidable preference under § 547(b). P & H, however, argues that summary judgment is not warranted because it has valid affirmative defenses to the preference claim.

Under § 547(b) of the Code, the trustee, or the Committee of Unsecured Creditors when so empowered, may avoid any transfer of an interest of the debtor in property (1) made to or for the benefit of a creditor, (2) for or on account of an antecedent debt owed by the debtor before such transfer was made, (3) made while the debtor was insolvent, (4) within the 90–day period preceding the filing of the petition, and (5) that enables such creditor to receive more than it would have received in a chapter 7 liquidation if the transfer had not been made. § 547(b).

■ The threshold issue in a preference action is whether the transfer was of an interest of the debtor in property. P & H argues that the transfer here was not, because the funds paid to it came from a third party creditor, KingCo, who directed how the money was to be used. CMP, according to P & H, never had dispositive control over the money and therefore, the money was not property of the debtor.

■ "Property of the debtor," though not defined in the Bankruptcy Code, is generally considered to be the property that would have been part of the estate had it not been transferred before the bankruptcy case. *Int'l Ventures, Inc. v. Block Properties VII (In re Int'l Ventures),* 214 B.R. 590, 594 (Bankr.E.D.Ark. 1997). Payments made by a third party to reduce a debt of the debtor would not be part of the estate. *See Id.* P & H claims that the funds here were paid by a third party, KingCo, into an account which was subject to KingCo's supervision and control. As a result, the funds were "earmarked" by KingCo for payment to P & H, and were thus not property of the debtor.

■ The initial inquiry must be whether the funds were ever property of the estate, assuming they came into the estate. Whether there has been earmarking in a particular case may be determined by the use of the four-part test set forth in *In re Bohlen Enterprises, Ltd.,* 859 F.2d 561, 565 (8th Cir.1988). This District has used the same four-part test. *See Steinberg v. NCNB Nat'l Bank of North Carolina (In re Grabill Corp.),* 135 B.R. 101, 109–110 (Bankr.N.D.Ill.1991). Earmarking occurs when the following four requirements have been met:

1. the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt;

2. performance of that agreement according to its terms;

3. the transaction viewed as a whole, including the transfer in of the new funds and the transfer out to the old creditor does not result in any diminution of the estate; and

4. the debtor lacked dispositive control over the transferred property.

*Grabill,* 135 B.R. at 110.

■ Here, as to the claim portion, the earmarking requirements have not all been met, because the transaction, viewed as a whole, did result in the diminution of the estate. Generally, the substitution of

one creditor for another does not diminish the debtor's estate. *Int'l Ventures,* 214 B.R. at 595–96. However, as the court in *International Ventures* stated, "[I]f the debtor transfers a security interest in return for the funds, the debtor has, by giving a security interest in exchange for the payment of an unsecured debt, transferred an interest in property." *Id.* at 596. In short, when a debtor encumbers its property to obtain a loan, the transfer diminishes the debtor's assets. *DeRosa v. Buildex, Inc. (In re F & S Cent. Mfg. Corp.),* 53 B.R. 842, 847 (Bankr.E.D.N.Y. 1985). Here, CMP did not simply trade one unsecured creditor for another; it traded unsecured debt owed to P & H for secured debt owed to KingCo, debt which was secured by all of CMP's assets. This clearly resulted in the diminution of the estate, since, by obtaining a security interest in all of CMP's assets, KingCo made them unavailable to other creditors. Because the requirements of the earmarking doctrine were not met here, there would seem to have been a transfer of an interest of the debtor in property.

There is no genuine issue with respect to any of the other § 547(b) preference elements as to the $54,862.75 claim portion of the transfer to P & H. The transfer was to a creditor, P & H, was on account of antecedent debt for legal services and was made only two days prior to the bankruptcy filing. Additionally, the transfer enabled P & H to receive more than it would have received in a Chapter 7 liquidation. P & H admits this fact in its answer to plaintiff's first request for admissions at paragraph 22. Finally, CMP is presumed to have been insolvent during the 90 days before the filing of the bankruptcy petition and P & H has not presented evidence to rebut this presumption.

### 1) Section 547(c)(1) Contemporaneous Exchange

 P & H argues that it has two affirmative defenses under § 547(c). First, P & H argues that, under § 547(c)(1), the claim portion of the transfer was a contemporaneous exchange for new value. This section provides that the trustee, or the Committee, if empowered to prosecute avoidance actions, may not avoid a transfer as preferential, to the extent that such transfer was (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor, and (B) in fact a substantially contemporaneous exchange. § 547(c)(1). Such a transfer is excepted from avoidance as a preference, because to the extent new value is given, the preferential payment is repaid to the debtor. *Heyman v. Woldman (In re Elton Trucking, Inc.),* 1996 WL 261059, *9 (Bankr. N.D.Ill.1996). This section requires that (1) the transferee extend new value to the debtor, (2) that both the transferee and the debtor intend this new value and the debtor's reciprocal transfer to be contemporaneous and (3) that the exchange is fact contemporaneous. 5 Collier on Bankruptcy ¶ 547.01[1] at p. 547–42 (Lawrence P. King 15th ed.1997). The preference defendant has the burden of proving that the transfer qualifies for this exception. § 547(g).

This Court finds that P & H has provided the necessary evidence to support its defense under § 547(c)(1). P & H did give value to CMP by providing legal services. Additionally, the very nature of the transaction here indicates that a substantially contemporaneous exchange was intended by the parties; P & H assisted CMP in obtaining financing, and when the financing was obtained, P & H got paid with money from the proceeds. This payment was a contemporaneous exchange because it was made the day P & H's financing related services were completed, which was the day the financing was acquired.

However, it is not clear how much of the $54,862.75 claim portion of the transfer to P & H was payment for legal services rendered in connection with the financing. In P & H's 402(N) statement, it admits

that some of the legal services were related to the acquisition of financing and the remaining legal services were related to litigation and general corporate matters. While the payment for the services related to the financing was clearly a contemporaneous exchange for new value, it is not clear whether the payment for services related to litigation and general corporate matters also qualifies for protection from avoidance under § 547(c)(1). P & H must present evidence at trial showing what services were rendered and what part of the $54,862.75 claim portion of the payment was for financing related services and what part was for other legal services.

### 2) Section 547(c)(2) Ordinary Course

■■■■ P & H's next argument is that it is entitled to an exception from preference avoidance under § 547(c)(2), which provides that a transfer may not be avoided to the extent that it was (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, (B) made in the ordinary course of business or financial affairs of the debtor and the transferee, and (C) made according to ordinary business terms. § 547(c)(2). It is a well-settled principle that subsections (A), (B) and (C) are distinct and each must be proven separately. *Milwaukee Cheese Wisconsin, Inc. v. Straus (Matter of Milwaukee Cheese Wisconsin, Inc.)*, 191 B.R. 397, 400 (Bankr.E.D.Wis.1995). The creditor against whom recovery or avoidance is sought, here P & H, has the burden of going forward to demonstrate that the transfer is not avoidable. § 547(g).

■■■■ First, § 547(c)(2) requires that the debt be incurred by the debtor in the ordinary course of business. This section was designed to protect recurring, ordinary credit transactions that are both incurred and paid in the ordinary course of business of both the debtor and the transferee. 5 Collier on Bankruptcy ¶ 547.04[2] at p. 547–47 (Lawrence P. King. 15th ed.1997). The transaction here was the

payment of legal debts incurred in the course of shareholder litigation against CMP's board of directors and in assisting the new board obtain financing. Most cases dealing with the ordinary course of business exception to preferences involve business operations, not shareholder litigation or obtaining financing for a corporation with a newly elected board of directors. These cases involve such things as a pizza maker paying its sausage supplier, *Tolona Pizza*, 3 F.3d at 1031 and an airline paying a cabinet maker, *Midway Airlines*, 69 F.3d at 794. Clearly, paying a supplier of products or services used in the everyday business qualifies as the ordinary course of business of the debtor. The issue is less clear, however, when more unusual situations are involved. Proxy contests for corporate control, while they may be increasingly common, are not the ordinary course of business of a publicly held corporation. *Southmark Corp. v. Schulte, Roth & Zabel (In re Southmark Corp.)*, 217 B.R. 499, 504 (Bankr.N.D.Tex. 1997). This is the case even if the corporation faces two proxy contests in one year. *Id.* These are not ordinary course transfers.

P & H has not shown that the portion of the transfer used to pay for legal costs incurred in CMP's attempt to obtain financing qualifies for treatment under the ordinary course exception. It may well be that, as P & H claims, it is common for businesses like CMP to incur legal costs when obtaining financing. However, there has not been any evidence presented that shows that those activities were in the ordinary course for CMP. The CMP shareholders formed KingCo to provide financing for CMP. P & H has not shown that such a transaction, where a debtor, on the verge of financial disaster, creates a third party creditor made up of its own shareholders, is ordinary. Therefore, the portion of the debt incurred in connection with the financing was not incurred in the ordinary course of the debtor's business.

Next, the transfer itself must be made in the ordinary course of business or financial affairs of the debtor and the transferee. § 547(c)(2)(B). In making this determination, courts look at the course of dealing between the parties established before the preference period. *See Matter of Tolona Pizza Products Corp.*, 3 F.3d 1029, 1033 (7th Cir.1993). This calls for a subjective analysis. *Milwaukee Cheese*, 191 B.R. at 400. Courts consider, in determining whether the transfer was ordinary in relation to past practices, whether the creditor engaged in any unusual collection activity during the 90 days before the bankruptcy, since a payment made in response to such collection activity is not made in the ordinary course of business. *Schwinn Plan Comm. v. AFS Cycle & Co., Ltd.*, 205 B.R. 557, 572 (Bankr.N.D.Ill. 1997). Other factors courts consider include the length of time the parties were engaged in the transactions at issue, whether the amount or form of tender differed from past practices and whether the creditor took advantage of the debtor's deteriorating financial condition. *Solow v. Ogletree, Deakins, Nash, Smoak & Stewart (In re Midway Airlines, Inc.)*, 180 B.R. 1009, 1013 (Bankr.N.D.Ill.1995).

The transfer could not be ordinary in relation to past practices between CMP and P & H because there were no past practices. This was the first time CMP ever retained and paid P & H.

Finally, § 547(c)(2)(C) requires that the transferee present evidence of the practices of its competitors, to establish the ordinary business terms of the industry. *In the Matter of Midway Airlines, Inc.*, 69 F.3d 792, 795 (7th Cir.1995). This calls for an objective analysis of the industry. *Milwaukee Cheese*, 191 B.R. at 400. First, the relevant industry must be defined, and then the creditor must present evidence of the ordinary business terms within that industry. *Moglia v. ISP Technologies, Inc. (In re DeMert & Dougherty, Inc.)*, 232 B.R. 103, 108 (N.D.Ill.1999).

P & H has not offered any evidence of what the relevant industry is and whether this transaction conforms to the ordinary practices of such industry. In its brief, P & H states, "P & H is in the business of providing such legal services," and that the payment to them was made and received in the ordinary course of business of P & H and CMP. The only evidence offered to show that there is anything customary about this transaction is the affidavit of Gregory Kazarian, an attorney employed by P & H. Such testimony does not meet the requirements of the objective § 547(c)(2)(C) test. The creditor, to prevail under this section, must provide some evidence of its competitors' practices. P & H, in support of its argument, provided only the conclusory affidavit of one of its employees; however, "[g]eneral testimony by an employee of the defendant, unsupported by any specific data, is insufficient to prove 'ordinary business terms.'" *In re Schwinn Bicycle Co.*, 205 B.R. at 573. Since P & H has not provided evidence of the relevant industry standard, this transfer is not entitled to protection from avoidance under § 547(c)(2).

### B) Section 548 and the shareholder portion of the payment

Finally, P & H argues that there are issues of material fact with respect to the Committee's claim that the shareholder portion was a fraudulent transfer. The Committee argues that the transfers, to the extent they were payment for services rendered to the shareholders, were constructively fraudulent under both the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act ("UFTA"). Findings made under § 548 of the Code are applicable to actions brought under the UFTA, because the provisions parallel each other. *Levit v. Spatz (In re Spatz)*, 222 B.R. 157, 164 (N.D.Ill.1998), *citing In re Randy*, 189 B.R. 425, 433 (Bankr. N.D.Ill.1995). § 548 and the UFTA have different limitations periods; § 548 may be used to avoid transfers made within one

year of the bankruptcy filing, while, under the UFTA, the trustee may avoid transfers made within four years of when the transfer was made. Because the transfer here was made only two days before the bankruptcy filing, both provisions are available to the Committee.

Here, the Committee is alleging constructive, rather than actual fraud. The part of § 548 that applies to constructively fraudulent transfers provides for the avoidance of transfers of an interest of the debtor in property made within one year before the filing of the bankruptcy petition if the debtor (B)(i) received less than a reasonably equivalent value in exchange for such obligation; and (ii)(I) was insolvent on the date that such transfer was made or became insolvent as a result of such transfer, (II) was engaged in a business or transaction for which any property remaining with the debtor was an unreasonably small capital, or (III) intended to incur or believed that the debtor would incur debts beyond its ability to pay as such debts matured. § 548(a).

■ Because the transfer clearly occurred within one year of the filing of the petition and was a transfer of an interest of the debtor in property, the first element at issue here is whether CMP received less than reasonably equivalent value in exchange for the transfer. Reasonably equivalent value is interpreted the same way under both § 548 and the UFTA, because the term, as used in the UFTA, is derived from § 548(a)(2). *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 577 (7th Cir.1998). Whether a transfer is for reasonably equivalent value is ordinarily a question of fact, and the Court must consider the circumstances surrounding the transfer. 5 Collier on Bankruptcy ¶ 548.05[1][b] at p. 548–33 (Lawrence P. King 15th ed.1997). P & H, however, must demonstrate that a question of fact exists in order to defeat the motion for summary judgment. The inquiry into reasonably equivalent value is a rather nar-

row one, focusing on the value of the property or services given to the debtor in exchange for the transfer. *Carmel v. River Bank America (In re FBN Food Services, Inc.)*, 175 B.R. 671, 688 (Bankr. N.D.Ill.1994). The Committee bears the burden of proof as to this issue, and as to the other elements of § 548. *Carmel v. River Bank America (In re FBN Food Services, Inc.)*, 175 B.R. 671, 682 (Bankr. N.D.Ill.1994).

■ The general rule is that a debtor does not receive reasonably equivalent value if it made a transfer in exchange for a benefit to a third party. *Johnson v. NBD Park Ridge Bank (In re Octagon Roofing)*, 124 B.R. 522, 527 (Bankr.N.D.Ill.1991). However, the Seventh Circuit, in a recent case affirming a decision of this Court, stated that this is not invariably the case. *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 578 (7th Cir.1998). *Leibowitz* involved an intercorporate guarantee, a situation different from the one presented here. *Id.* at 577. However, the reasoning behind the decision applies equally well in this case, because both cases involve a corporation making a transfer primarily for the benefit of a third party. The court stated that, although a guarantor may receive no direct economic benefit from a transfer, courts are increasingly willing to consider whether it received an indirect benefit. *Id.* at 578.

■ To be recognized by the courts, an indirect benefit must be "fairly concrete." *Id.* In the guarantor situation, an example of an indirect benefit is when the guarantor receives from the debtor part of the consideration paid to it. *Id.* An indirect benefit was also found when the guarantee of a debt resulted in the strengthening of the corporate group as a whole, and indirect benefits may also include intangibles such as goodwill or the relationship between affiliates. *Id.* In short, there is a willingness by courts to consider the benefits more holistically and look at the over-

all effect on the entity making the transfer.

Here, the facts indicate that CMP was on the verge of collapse when the shareholders brought suit against Nordness and the former board of directors. Clearly, CMP received a benefit from the lawsuit, since the former board was engaging in wasteful and harmful conduct that was likely to result in the destruction of CMP, and the lawsuit resulted in their removal. The clients, however, were the shareholders and there was no guarantee by CMP. It is not disputed that services was rendered to the shareholders. However, what value was later received by the debtor, directly or indirectly, for the assumption of the debt? There has been no evidence presented which shows that CMP received a benefit from the *transfer* it made to P & H to pay for the shareholders' legal bills stemming from the lawsuit. The lawsuit had been settled and any benefit due to the result had already been received, and therefore no benefits, direct or indirect, flowed to CMP as a result of the transfer to P & H. P & H has not shown that CMP received any services or property or even any indirect benefit in exchange for the transfer. Because there is no evidence showing that CMP received any value in exchange for the transfer to P & H, this Court concludes that it did not.

This Court further finds that CMP was insolvent at the time of the transfer. Insolvency, as defined in the Bankruptcy Code, is where the sum of the debtor's debts is greater than all of the debtor's non-exempt property at fair valuation. § 101(32)(A). In its answer to the Committee's first request for admissions, at paragraph 21, P & H admitted that the sum of CMP's debts exceeded the sum of its property at fair valuation. In its response to plaintiff's statement of facts at paragraph 8, P & H denied that the sum of CMP's debts exceeded the sum of its property at fair valuation. This denial includes a reference to paragraph 45 of P & H's statement of material facts, which states that CMP did not retain an unreasonably small amount of capital after the transfer. This paragraph cites to the affidavit of David M. Schwartz, a business consultant to CMP. The referenced paragraph, number 43, states that CMP did not retain unreasonably small capital. Neither paragraph referred to supports the denial of the fact that CMP's debts exceeded value of its property, since insolvency and unreasonably small capital are two different concepts.

Although P & H did not refer to paragraph 44 of Schwartz' affidavit, that paragraph states that Schwartz "did not believe that CMP was insolvent" at the time of the transfer to P & H. While this statement does address the issue of whether CMP's debts exceeded the sum of CMP's property, it is a conclusory statement which contains no factual support; there is no mention of a balance sheet, financial statements or anything else upon which Schwartz based his opinion. Therefore, this Court finds that on May 22, 1996, the date the checks were issued, and on May 23, 1996, the date the checks were deposited into P & H's account, CMP was insolvent.

## CONCLUSION

The issue to be determined is, therefore, whether the $100,000 was property of the estate. The facts submitted by the motion are insufficient for the Court to proceed by way of Summary Judgment.